Weldon, J.,
delivered the opinion of the court:
September 1,1870, claimant was commissioned second assistant engineer in the Navy. October 6,1874, he was ordered to appear before the retiring board for examination. The board found him “ incapacitated for duty by disability which did not originate in the line of duty.” The finding was approved by the President October 26, 1874, and the claimant was thereupon retired upon furlough pay as required by section 1454 of the Revised Statutes.
What was his retired furlough pay ?
Section 1593 provides that officers retired “ on furlough pay shall receive only one-half of the pay to which they would have *142 been entitled if on leave of absence on the active list.” Section 1556 provides that leave of absence pay for second assistant engineers (now assistant engineers by Act February 24,1874, chapter 35, Supplement Rev. Stat., 5). on the active list shall be $1,000 a year. Therefore, claimant’s pay after retirement was $500 a year.
March 1,1878, the claimant was nominated by the President to be transferred “ from the furlough to the retired pay list of the Navy from October 26, 1874,” in accordance with section 1594 of the Revised Statutes. The nomination was confirmed by the Senate, and April 1, 1878, the transfer was made. By this transfer to “the retired paylist” claimant became entitled under the second clause of section 1588, Revised Statutes, to one-half of the sea pay of a second assistant engineer on the active list. The sea pay on the active list (Rev. Stat., § 1856) is $1,700 a year. Claimant’s pay, therefore, by this transfer, was raised from $500 to $850 a year.
It follows that claimant’s pay from October 26,1874, to April 3, 1878, was at the rate of $500 a year; and after April 1,1878, at the rate of $850 a year. This was the opinion of the Attorney-General. (16 Ox)inions, 22.)
Several objections are raised to these conclusions.
1. It is said that the claimant by this transfer became entitled to receive the pay provided for in the first clause of section 1588 and not the second clause. The finst gives the class who come within it 75 per cent, of their sea pay, while the second gives to another class only 50 per cent, of their sea pay.
To which class did claimant belong ? Most clearly to the second. The cause of incapacity marks the division line between the two classes. Those whose incapacity is caused by the service are on one side of the line; those whose incapacity is not caused by the service are on the other.
By the finding’ of the retiring board and the approval and decision by the President thereon it was officially determined that the incapacity of the claimant was not'caused by the service, and so he comes under the second clause of that section.
2. This finding, it is said, was changed by the letter of the Secretary of the Navy. “ The department,” says the Secretary, under date of March 1, 1877, “ is of the opinion that the causes which incapacitated him for active duty were incident to the service.” Unfortunately for the claimant, the retiring *143 board, by tbe President’s approval, and not “the department,” was authorized by, law to settle that fact (Rev. Stat., §§ 1451 and 1454), and by the finding’ of that board and the approval of the President it had been settled more than two years before the “opinion of the department” was known or formed. At the time the opinion of the department was promulgated the Secretary had no more power to revise the finding of the board and reverse the approval and action of the President thereon than he had to overrule a decision of the Supreme Court. If at that late day he had a right to change the finding of the board so as to affect favorably the pay, credit, or status of a retired officer, he had also the power to change such findings so as to affect unfavorably the pay, credit, and status of other retired officers. That is to say, he could, at his pleasure, regardless of .the retiring board and the President, change retired officers from the 75 per centum clause of section 1588 to the 50 per centum clause, and vice versa, by simply announcing that “in the opinion of the department” the cause of the incapacity of the retired officers did not originate in the way set out in the finding of the retiring board. This might be done as often as “ the opinion of the department ” under its ever-changing supervision might fluctuate.
3. It is further said that this transfer of the claimant “ fi;om the furlough to the retired pay list ” not only changed his rate of pay, but incidentally had the effect to abrogate the finding of the retiring board, and inserting in its place that the cause of his incapacity did originate from the service. We do not concur in this theory. In the opinion of the court that finding remainded in claimant’s record, and determined his position to be in the second clause of section 1588. This is not a new question. It was decided by this court in Magaw’s Case (16 C. Cls. R., 3), and Morse's Case (ibid., 12).
4. It is again said that the transfer took effect October 26, 1874, so that even under the above ruling claimant would be entitled to receive $850 a year during the whole period of his retirement.
It is true that the President’s nomination stated the transfer to be from October 26, 1874, and the Senate advised and consented to the nomination in that form and from that date; but what was the law ? The law must control. The House participates in making the law, and the President and Senate cannot *144 ■change it through the process of making and advising and consenting to a nomination. All the power of the President in the premises is derived from the Revised statutes, which provide as follows:
“Seo. 1594. The President, by and with the advice and consent of the Senate, may transfer any officer on the retired list from the furlough to the retired pay list.”
This section authorizes the transfer — nothing' more. The President and Senate make the transfer; other officers consider its legal effect. If the legal effect of a simple transfer ■does not in itself reach back to the time of retirement, the President and Senate cannot so extend it by inserting in the nomination their construction of the law, and thereby exercise a power not conferred.
We are unable to find any words in section 1594 indicating that a simple transfer would have any retroactive effect, nor that authorizes the President and Senate to lengthen, diminish, or alter the legal effect of such transfer.
In Collins’ Case (15 C. Cls. R., 34) this court said :
“ There is a class of cases with which this should not be confounded; cases where officers, for the purposes of rank, are appointed and commissioned by the Executive as of a date earlier than the day of appointment, without any special act of Congress. Such was the case of Surgeon Du Barry, in which Attorney-General Clifford very strongly advised that the appointee was nob entitled to pay prior to the time of his actual appointment. (4 Opin. Att’ys Gen., 003.) It is clear that the Executive — the President alone, or the President with the advice and consent of the Senate — by antedating the commission or appointment of a public officer, without legislative authority, cannot create a liability on the part of the United States to pay him a salary for the time he was not in service; but Congress, the legislative branch of the government, may by law create such liability, and may allow back pay to any public officer in consideration of past services or for any other cause which they deem sufficient.”.
The court adheres to the opinion then expressed.
After April 1,1878, claimant was paid at the rate of $850 a year, which was the amount, in the opinion of the court, to which he was entitled.
From October 26,1874, to April 1, 1878, the claimant was paid at the rate of $1,275 a year, as appears- by finding IY, amounting in all to $4,370. In the opinion of the court he was entitled to be paid for that time only at the rate of $500 a year, *145 amounting in all to $1,714. He has therefore been overpaid $2,656.
According to these views, the defendants would be entitled to recover on their counter-claim the sum of $2,656.
Inasmuch, however, as the conclusion of the majority of the court restricts the power exercised by the President in antedating the transfer, and of the Senate in advising and consenting thereto in that form, and inasmuch as the views here expressed are not altogether agreed to by some members of the court,* in order that the case may be heard in the Supreme Court on appeal, if the parties so desire, the court directs that the petition and counter-claim be dismissed.

 See Miller and McBlair’s cases, post.